UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| OMID HAMZEHZADEH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-1868 PLC |
| | ) | |
| ST. CHARLES COUNTY, MISSOURI, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Omid Hamzehzadeh, a police officer with the St. Charles County Police Department, alleges that: (1) Defendant St. Charles County ("County") discriminated against him on the basis of race and national origin in violation of the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 et seq.; and (2) Defendants County, Police Chief David Todd, Captain Christopher Hunt, and Director of Administration Joann Leykam (collectively, "Defendants") retaliated against him for exercising his First Amendment right to freedom of association. Defendants seek summary judgment on both counts. [ECF No. 36] Plaintiff opposes the motion. [ECF No. 40] In addition, Plaintiff and Defendants move to strike exhibits. [ECF Nos. 46 and 51] For the reasons set forth below, the Court grants Defendants' motion for summary judgment and denies as moot the parties' motions to strike.

**I.      Background**

Plaintiff, a naturalized United States citizen who was born in Iran, has been employed as a police officer by the St. Charles County Police Department ("Department") since April 2017. [ECF No. 38 at ¶¶ 1, 3] He joined the "Local 42 Police Union" in 2019. [ECF No. 39 at ¶ 17]

1

A.  Denial of Special Assignments and Poor Performance Evaluation

In early 2018, Plaintiff applied for a special assignment to the St. Charles Regional SWAT Team and attended "SWAT school."  [ECF No. 38 at ¶ 18]  At his deposition, Plaintiff testified that during SWAT school, the instructors belittled and harassed him, ordered him to run 200 laps and repeat exercises that other officers only had to do once, and required him to wear "goggles and a helmet [that] nobody else was wearing."  [ECF No. 39-1 at 84-89]  Plaintiff also stated that he heard supervisory employees use "ethnic names and slurs."  [ECF No. 39-1 at 73-74]  Plaintiff did not complete SWAT school.  [ECF No. 38 at ¶ 19; ECF No. 39 at ¶ 33]

On the same day that Plaintiff was "kicked out of the SWAT school," his supervising captain informed Plaintiff he was denying Plaintiff's application for the Motor Unit.  [ECF No. 39 at ¶ 35]  Plaintiff also applied for and was denied:  special assignments in the Traffic Unit in 2019 and 2020 and the Drug Task Force in 2019; and several instructor positions in 2019; a corporal position in 2021; and a sergeant position in 2021. [ECF Nos. 39 at ¶ 23, 39-1 at 256-63, 39-2 at 3]

In early December 2019, Plaintiff learned that he received a "below expectations" rating on his annual performance evaluation.  [ECF Nos. 38 at ¶ 26, 38-11]  In the evaluation, Plaintiff's supervisor Sergeant Drews noted instances of Plaintiff:  "lack[ing] thorough investigations and documentations of those investigations," such as when he "sent a warrant application over after 1700 hours when no one was at the PA's office from an arrest the prior night"; "not listening to what other officer's [sic] are being dispatched to and failing to cover his zone partners"; "not assist[ing] with sharing call load with other zones who have been busier throughout shift" and "only answering radio calls if given to him."  [ECF No. 38-11 at 1-2] Sgt. Drews concluded that Plaintiff "has the qualities to make a good police officer if he applied himself, however his work ethic makes it seem as if he does not take his job serious[ly]."  [Id. at 4]

Plaintiff asked Sgt. Drews to explain the performance evaluation because he was surprised by the "below expectations" rating.  [ECF No. 38 at ¶ 30]  Sgt. Drews sent Plaintiff an email with Plaintiff's performance log, which reflected a failure to back up other officers in June 2019 and a late warrant application in July 2019.  [ECF No. 38-12 at 2]  Sgt. Drews assured Plaintiff that "we as shift supervisors have your back" and "[n]ext year is a new year and will be lots of changes that we all are looking forward to."[1]  [Id.]

B.  Allegations of Misconduct and Internal Affairs Investigation

On August 21, 2019, C.P., a twenty-year-old former County dispatcher, submitted a written complaint to the Department alleging that Plaintiff and County Police Officer Tom Tumbrink provided her alcohol and forced her to have sexual intercourse with them. [ECF Nos. 39 at ¶ 38, 39-7]  Later that day, Capt. Hunt, then Commander of the Department's Bureau of Administrative Services, informed Plaintiff that there would be an Internal Affairs (IA) investigation and an independent criminal investigation into C.P.'s allegations.  [ECF Nos. 38-6, 39 at ¶ 46]  Chief Todd placed Plaintiff and Officer Tumbrink on administrative leave pending the IA investigation.[2] [Id. at ¶ 47; ECF Nos. 39-5, 39-6 at 9]

As part of the IA investigation into C.P.'s allegations, a detective sergeant from the Wentzville Police Department administered a polygraph examination.  [ECF Nos. 38 at ¶6, 39 at ¶¶ 52-53]  Plaintiff submitted to the two-part polygraph examination on September 12 and 13, 2019.  [Id.]

---

[1] Plaintiff received satisfactory annual performance evaluations in 2017, 2020, and 2021.  [ECF No. 39 at ¶ 85]

[2] At his deposition, Plaintiff affirmed that, when he returned from his fifty-five-day unpaid administrative leave, the "balance was returned to [his] PTO balance or comp time, whatever, those 55 days were returned to [him.]"  [ECF No. 39-1 at 224]

On October 2, 2019, Lieutenant Koester provided a memorandum to Chief Todd detailing the conclusions of the IA investigation.  [ECF No. 39-7]  Based on C.P.'s statements and the results of Plaintiff's polygraph examination, Lt. Koester found "there is enough [evidence] to SUSTAIN" the allegation that Plaintiff supplied alcohol to a person who was under the legal drinking age.  [Id. at 6]  However, in the absence "direct evidence or witnesses" to support C.P.'s allegations that Plaintiff had "non-consensual sex" with her, Lt. Koester determined that allegation was "NOT SUSTAINED."[3]  [Id.]

On October 16, 2019, Capt. Hunt presented Plaintiff a "Notice of Proposed Severe Disciplinary Action."  [ECF No. 38-7]   In the notice, Capt. Hunt cited the "credible allegation, that was sustained following an IA investigation, that [Plaintiff] supplied alcohol to a person who was under the legal drinking age."  [Id. at 4]  According to the notice, Plaintiff violated several Department policies by providing C.P. alcohol and demonstrating deception during the polygraph examination.[4]  The notice informed Plaintiff that "the proposed discipline being considered is a one-day unpaid suspension" and Plaintiff had the right to request "a pre-disciplinary review … before a final decision is made on the proposed disciplinary action."  [ECF No. 38-7 at 2]  Plaintiff

---

[3] The City of St. Charles conducted a criminal investigation into C.P.'s allegations.  [ECF Nos. 38-9, 39-4 at 22]  According to Lt. Koester's October 2, 2019 memorandum to Chief Todd regarding the IA investigation, the St. Charles City Police Department investigated C.P.'s allegations and submitted its findings to the "Prosecuting Attorney's Office in St. Charles for consideration of criminal charges being issued."  [ECF No. 39-7 at 4]  Prosecuting Attorney Tim Lohmar "petitioned the courts to have a special prosecutor assigned to the case," and the "report was sent to the Prosecuting Attorney's office in Lincoln County, MO."  [Id. at 4]  According to Lt. Koester's deposition testimony, Lincoln County did not file criminal charges against Plaintiff. [ECF No. 39-6 at 16, 26]

[4] Capt. Hunt determined that, by supplying alcohol to a person who was under the legal drinking age, Plaintiff violated Department policies prohibiting conduct unbecoming of an officer and criminal conduct.  [ECF No. 38-7]  Additionally, Capt. Hunt found that the deception Plaintiff demonstrated during the polygraph examination violated the Department policy prohibiting employees from "[g]iving false, inaccurate, or incomplete statements or concealing information regarding any Departmental business including investigations of misconduct."  [Id.]

4

claims that, before he signed the acknowledgement form accompanying the Notice of Proposed Severe Disciplinary Action, Capt. Hunt refused his request to call a Local 42 representative.[5]  [ECF No. 39 at ¶ 63]

Plaintiff appealed the proposed disciplinary action to Chief Todd.  [ECF No. 39 at ¶ 67]  On October 21, 2019, Chief Todd held a pre-disciplinary review meeting with Plaintiff, Capt. Hunt, and Local 42 representative David Reagan.  [ECF Nos. 38-9 at 2, 39-1 at 185]  Chief Todd upheld the one-day suspension.  [ECF No. 39  at ¶ 67]  Director Leykam subsequently reviewed the matter  "to ensure that the procedural requirements were satisfied" and issued a memorandum approving Chief Todd's decision to impose a one-day suspension.   [ECF Nos. 38-9 at 3, 49 at ¶ 67]

On December 13, 2019, Plaintiff filed an "Employee Grievance Procedure Form" against Capt. Hunt with the County's Human Resources Department. [ECF Nos. 39 at ¶¶ 68, 73; 39-8]  In the grievance, Plaintiff alleged thirteen policy violations arising from Capt. Hunt's handling of the disciplinary process, including disciplinary threats, release of confidential information and Garrity statements and records, and refusal to allow union representation.  [ECF Nos. 39 at ¶ 73; 39-8]

Plaintiff and a union representative met with Dir. Leykam to discuss his grievance.  [ECF No. 39 at ¶¶ 74-75]  At the meeting, Dir. Leykam admitted that she had not reviewed all of the evidence, including the St. Charles City Police Department report, and advised that she would

---

[5] Plaintiff alleges that Capt. Hunt "became irate and refused to allow [Plaintiff] to contact his Union representation.  Hunt immediately threatened [Plaintiff] with Disciplinary action if he did not sign the documents."  [ECF No. 39 at ¶ 63]  According to Plaintiff, Capt. Hunt stated, "you are at work right now, you don't work for the union, you work for the County Police Department, and if you don't wanna obey orders, I'm gonna discipline you."  [Id.]  Defendants deny this allegation and further assert that Plaintiff was "not entitled to union representation when presented with an acknowledgement form accompanying a notice of proposed severe discipline."  [ECF No. 49 at ¶¶ 63-64]

review the document and provide a decision.  [ECF No. 39 at ¶ 75]  Upon review of the "documents

in this matter," as well as conversations with Plaintiff, Capt. Hunt, Lt. Koester, and the County's

Prosecuting Attorney, Dir. Leykam issued a decision stating she "d[id] not find cause to order an

investigation of Captain Hunt."   [ECF No. 39-8 at 8]   Chief Todd issued a notice of severe

discipline on January 2, 2020, informing Plaintiff he would receive a one-day unpaid suspension.

[ECF Nos. 39 at ¶ 76; 39-10]

C.  Procedural Background

Plaintiff filed a charge of discrimination with the Missouri Human Rights Commission

(MHRC) alleging that the County "discriminated against [him] because of [his] color, national

origin, and race."  [ECF No. 38-2]  In the MHRA charge's narrative description, Plaintiff stated:

> I have worked at the Saint Charles County Police Department since April 2017.  I
> have noticed that the department treats persons of color less favorably than
> Caucasian.  The [C]ounty attempts to show they are inclusive employer and have
> marketing materials that show minorities that work for them.  However, their
> representations of inclusion do not apply to their applications of their policies.
> Caucasian police officers are routinely not reprimanded for violations of policies
> and laws and persons of color are reprimanded and even terminated for minor
> policy violations.  Management turns a blind eye to the violations of Caucasian
> officers while they aggressively pursue reprimands and investigations against
> officers of color.
>
> I am of Iranian national origin and darker complexion.  Recently false allegations
> were made against me and a fellow officer who is Native American[.]  We were
> both suspended without pay for 55 days.  The allegations against us were found to
> be unsubstantiated by outside agencies.  The time we lost was reinstated by the
> County after our union became involved.  Policy indicates that the time should [be]
> reinstated if the allegations are not sustained or are unfounded.  Nevertheless, we
> were both given one day suspensions without pay.
>
> I was told by people in other police departments that knew that we had been
> suspended and allegations that had been made against us.  They told me that our
> reputation had been ruined in the other departments.  This was prior to the
> investigations being concluded.  [Chief Todd] contacted outside persons about us
> and indicated that we "were done" before the allegations made against us were
> investigated.  It is apparent that they were looking for a reason to get rid of us.

> There have been other officers of color who were terminated for dubious reasons. Recently an African American officer was terminated for turning in a report late. Charges against Caucasian officers are covered up by the department. The Caucasian Captain Christopher Hunt was convicted of burglary, assault and property damage. He was not suspended. A special position of Chief's Assistant was given to him which he allowed to work while he appealed his case. He was promoted to Sergeant and then Captain with[in] a few months.
>
> The department has discriminated against me because of my color, national origin, and race.

[Id.]   Although the MHRA charge does not specifically reference C.P., there is no dispute that that the specific investigation and related discipline about which Plaintiff complained arose from C.P.'s allegations that Plaintiff provided her alcohol while she was under the legal drinking age and forced her to have sex with him. The MHRC issued Plaintiff a Notice of Right to Sue Letter. [ECF No. 8 at ¶ 43]

Plaintiff filed a first amended petition asserting, in Count I, that the County violated the MHRA by discriminating against him on the basis of race and national origin and, in Count II, that Defendants retaliated against him for exercising his First Amendment right to free association in violation of 42 U.S.C. § 1983. In support of Count I, Plaintiff alleges that the County discriminated against him "by manufacturing a below expectations rating, denying him special assignments and allowing ethnic slurs and names to go on without any disciplinary action." [ECF No. 8 at ¶¶ 51, 58] In Count II, Plaintiff claims that the C.P. investigation and related discipline, as well as the denial of special assignments, were retaliation for union activities. [Id. at ¶¶ 60-64]

## II.    Defendants' Motion for Summary Judgment

The County moves for summary judgment on Count I (violation of the MHRA) on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies because he did not raise the poor performance review, denial of special assignments, or use of ethnic slurs in his MHRA charge; (2) Plaintiff's allegations relating to the denial of certain special assignments and use of

ethnic slurs are time barred; (3) denial of special assignments did not constitute employment actions; and (4) Plaintiff "has no evidence to support an inference that his race or national origin was a factor … in any employment decision that County took."[6]  [ECF Nos. 36 & 37]  In regard to Count II (First Amendment retaliation), Defendants assert that Plaintiff failed to establish a prima facie case of unlawful retaliation because he presents no evidence of a causal connection between Plaintiff's union activities and the alleged injury.  [Id.]  Defendants further argue that:  (1) the County is entitled to summary judgment because Plaintiff "cannot bring forth any evidence to prove the existence of an unconstitutional" municipal custom or policy, as required to establish Section 1983 liability under Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978); and (2) the Section 1983 claim against Chief Todd, Capt. Hunt, and Dir. Leykam are barred by qualified immunity.  [Id. at 14]

Plaintiff counters that he:  (1) established a prima facie case of race and national-origin discrimination under the MHRA; (2) did not fail to exhaust his administrative remedies and his claims are not time barred; and (3) established a prima facie case of unlawful First Amendment retaliation based on his union activities.  [ECF No. 40]  In regard to his Section 1983 municipal liability claim, Plaintiff argues that "there is overwhelming evidence of unconstitutional restraints on [Plaintiff's] union activity by the County's managers including Hunt, Todd and Leykam."  [Id. at 19]  Finally, Plaintiff asserts that the individual defendants are not entitled to qualified immunity because their conduct violated his clearly established constitutional right to union membership. [Id.]

---

[6] Defendants also argue that Defendants Todd, Hunt, and Leykam "are entitled to summary judgment as to Count I of Plaintiff's First Amended Petition in that they are not 'employers' under the MHRA."  [ECF No. 37 at 10]  As the first amended petition asserts claims in Count I against only the County, the Court need not address this argument.

**A.  Legal Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-movant must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); Gannon Int'l, Ltd. v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'"  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**B.  Race and National-Origin Discrimination in Violation of the MHRA (Count I)**

1.  Exhaustion

The County argues that it is entitled to summary judgment on Count I (violation of the MHRA) because Plaintiff failed to exhaust his administrative remedies and certain claims are time barred.  [ECF No. 37]  More specifically, the County contends that Plaintiff did not exhaust his administrative remedies as to his claims that the negative performance evaluation, denial of special assignments, and the County's tolerance of racial and ethnic slurs violated the MHRA because he did not challenge these acts as discriminatory in the MHRA charge.  Plaintiff counters that he

exhausted his administrative remedies because "[i]t is expected that an investigation by the EEOC related to disparate treatment in the workplace would by its very nature include inquiries into how the employer distributes performance ratings and evaluations and special assignments" and "any instances of ethnic slurs and names[.]"  [ECF No. 40 at 11]

The MHRA "requires plaintiffs claiming unlawful discrimination to exhaust their administrative remedies before coming to court." Bozue v. Mut. of Omaha Ins. Co., 536 F.Supp.3d 438, 449 (E.D. Mo. 2021) (citing Mo. Rev. Stat. §§ 213.075, 213.111(1)).  To exhaust his administrative remedies, a plaintiff must (1) file a charge of discrimination with the MHRC within 180 days of the alleged unlawful employment practice and (2) receive a right-to-sue letter.  Id.

Exhaustion of remedies also requires that a claimant "give notice of all claims of discrimination in the administrative complaint." Farrow v. St. Francis Med. Ctr., 407 S.W.3d 579, 594 (Mo. banc 2013) (citing Alhalabi v. Mo. Dep't of Nat. Res., 300 S.W.3d 518, 525 (Mo. App. 2009)).  "Each discrete act is a different unlawful employment practice for which a separate charge is required." Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 851 (8th Cir. 2012) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108 (2002)).  Although exhaustion requires notice of all claims of discrimination, "administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices." Henson v. Union Pac. R.R. Co., 3 F.4th 1075, 1080 (8th Cir. 2021) (quoting Alhalabi, 300 S.W.3d at 525).  See also Lin v. Ellis, 594 S.W.3d 238, 242 (Mo. banc 2020) ("In deciding a case under the MHRA, [state] appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law.").

"[A]dministrative remedies are deemed exhausted as to all incidents of discrimination that are like or reasonably related to the allegations of the administrative charge." Williams v. City of

Kansas City, 641 S.W.3d 302, 319 (Mo. App. 2021) (quoting Kerr v. Mo. Veterans Comm'n, 537 S.W.3d 865, 875 (Mo. App. 2017)).  "A claim is 'like or reasonably related' to the charge of discrimination if there is a factual relationship between them."  Id. (quotation omitted).  Although charges are interpreted liberally, "a litigant's civil claim can be only 'as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.'"  Foster v. BNSF Ry. Co., 866 F.3d 962, 966 (8th Cir. 2017) (quotation omitted).  See also Jeffery v. St. Louis Fire Dep't, 506 S.W.3d 394, 399-400 (Mo. App. 2016) ("[T]he critical question we must answer is whether the claims set forth in [the] petition were within the scope of the administrative investigation which 'could reasonably be expected to grow' out of his administrative charge.").  "To the extent that there exist[s] doubt as to [exhaustion of] administrative remedies, it [is the defendant's] burden to prove its affirmative defense of lack of exhaustion, and any doubt on the issue must be resolved in favor of [the plaintiff]."  Williams v. Target Stores, 479 Fed. Appx. 26, 28 (8th Cir. 2012).  See also Williams, 641 S.W.3d at 319.

In the MHRA charge of discrimination, Plaintiff checked the boxes stating that the County discriminated against him on the bases of race, national origin, and color.  [ECF No. 38-2]  In the narrative description, Plaintiff claimed generally that the County treated officers of color less favorably than white officers and subjected officers of color to harsher discipline by reprimanding and even terminating them for minor policy violations, while "turn[ing] a blind eye" to white officers' policy violations.  Additionally, Plaintiff claimed that C.P.[7] made "false allegations … against" him,  and although "outside agencies" determined the allegations were "unsubstantiated," he was placed on administrative leave for fifty-five days and received a one-day suspension

---

[7] There is no dispute that the "false allegations" to which the charge refers are C.P.'s complaint against Plaintiff.

without pay. [Id.]  Plaintiff's first amended petition (Count I) alleges that the County discriminated against him on the basis of race and national origin by assigning him a "below expectations rating," denying him special assignments, and allowing ethnic slurs.

Under the circumstances here, the question of exhaustion is a close call.  The Court agrees with the County that Plaintiff's MHRA's charge focused primarily on the investigation and disciplinary action resulting from C.P.'s complaint against him.  However, the first paragraph of the charge's narrative description alleged more generally that the County enforced its policies and disciplined its officers in a discriminatory manner.  More specifically, the charge stated that the County harshly disciplined officers of color for minor policy violations but essentially ignored the misconduct of white officers.  Keeping in mind that the Court must liberally construe the allegations contained in the charge to further the remedial purposes of the MHRA, the Court concludes that the charge's references to discriminatory disciplinary action are reasonably related to Count I's allegations of discriminatory performance evaluations, special assignments, and language.  See, e.g., Jeffery, 506 S.W.3d at 399.

Turning to whether the claims set forth in Count I were within the scope of the administrative investigation that "could reasonably be expected to grow" out of the MHRA charge, the Court finds a reasonable administrative investigation of the County's disciplinary practices could encompass performance evaluations and special assignments, as they all effect the conditions of employment and an officer's prospects for advancement in the Department.  See, e.g., id. at 400; Mayes v. Reuter, No. 4:17-CV-2905 CDP, 2018 WL 2267905, at *6 (May 17, 2018).  Similarly, allegations that the County disciplined officers of color more harshly than white officers could reasonably be expected to trigger an investigation into the use of derogatory language within the Department.  Because the allegations in Count I were within the scope of the

12

administrative investigation which could reasonably be expected to grow out of the MHRA charge, and because the County did not satisfy its burden to prove that Plaintiff failed to exhaust administrative remedies, the Court declines to grant summary judgment on that basis.[8]

　　2.　Merits

　　The County asserts that, even if Plaintiff administratively exhausted his race and national-origin discrimination claim, it fails on the merits.　More specifically, the County argues that Plaintiff failed to establish either a prima facie claim of discrimination or that the County's justifications for its actions were pretextual.　[ECF No. 37 at 4]　Plaintiff counters that "there is ample direct evidence that [the County] discriminated against [him] because of his race and national origin and that any stated reason for the acts of defendant are merely pretext for discrimination."　[ECF No. 40 at 7]

　　Under the MHRA, it is unlawful for an employer to refuse to hire, to discharge, or to otherwise discriminate against an individual because of, among other things, the individual's race or national origin.　Mo. Rev. Stat. § 213.055.1(1)(a).　An employer discriminates "because of" race or national origin when the individual's race or national origin was "the motivating factor" in the

---

[8] The County also argues that Plaintiff's claims relating to ethnic slurs and the denial of assignments to the Motor Unit and St. Charles County Regional SWAT Team are time-barred. Because Plaintiff filed his MHRA charge on November 19, 2019, his MHRA claims are only timely if they arose after May 23, 2019.　In his deposition, Plaintiff testified that:　(1) he heard "supervisory employees" use racist language and ethnic slurs in 2017 and 2018; and (2) the Department denied his applications for assignments to the Motor Unit and SWAT team in 2018. Because these alleged discriminatory acts occurred more than 180 days before Plaintiff filed the MHRA charge, the claims based thereon are time barred. See, e.g., Slayden v. Ctr. for Behavioral Med., No. 20-482-CV-W-GAF, 2021 WL 4076167, at *2 (W.D. Mo. Aug. 6, 2021).　However, as Plaintiff correctly points out in his response to the County's motion for summary judgment, these "prior acts may nevertheless be used as background evidence in support of a timely claim." Gillespie v. Charter Comm'cns, 31 F.Supp.3d 1030, 1034 (E.D. Mo. 2014) (quoting Nat'l R.R. Passenger Corp., 536 U.S. at 113)).

adverse employment decision.[9]  Mo. Rev. Stat. § 213.010(2).  See also Elmendorf v. Lincare, Inc., No. 4:19-CV-2479 JMB, 2020 WL 7695406, at *4 (E.D. Mo. Dec. 28, 2020) (the "motivating factor" standard "is analogous to the one used in employment discrimination claims under federal law[.]").

A claim of unlawful discrimination may be established through direct or indirect evidence. Jamerison v. Anthem Ins. Cos., Inc., No. 4:20-CV-1640 MTS, 2022 WL 950861, at *2-3 (E.D. Mo. Mar. 30, 2022).  Direct evidence of discrimination may include "remarks of the employer that reflect a discriminatory attitude," as well as "comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions."  Roberts v. Park Nicollet Health Servs., 528 F.3d 1123, 1128 (8th Cir. 2008).  "To be considered direct evidence of discrimination, a remark must be by a decisionmaker and 'show a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action.'"  Button v. Dakota, Minnesota & E. R.R. Corp., 963 F.3d 824, 832 (8th Cir. 2020) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1045-46 (8th Cir. 2011) (en banc)).

Plaintiff suggests that the use of ethnic slurs and names by his Department superiors and his alleged unfair treatment in SWAT school constitute direct evidence of discrimination. However, the record does not reflect that the individuals whom Plaintiff alleges used discriminatory language or mistreated him at SWAT school either were decisionmakers or participated in performance evaluations or special-assignment decisions.[10]  See, e.g., Carmon v.

---

[9] Race or national origin is a "motivating factor" if it "actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action."  Mo. Rev. Stat. § 213.010(19).

[10] Moreover, direct evidence must show a "specific link between the alleged discriminatory animus and the challenged decision[.]"  Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004).

Saks Fifth Ave., LLC, No. 4:19-CV-2855 AGF, 2021 WL 1312976, at *15 (E.D. Mo. Apr. 8, 2021); Woods v. Cir. Attorney's Off. of City of St. Louis, No. 4:19-CV-1401 SRC, 2020 WL 4334947, at *5-6 (E.D. Mo. July 28, 2020).  "[S]tray remarks in the workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process do not constitute direct evidence."  Button, 963 F.3d at 832 (alteration in original) (quoting Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 965 (8th Cir. 2006)).

Where, as here, a plaintiff lacks direct evidence and relies on indirect evidence of discrimination to establish his prima face case, a court applies the McDonnell Douglas burden-shifting framework. [11]  Muldrow v. City of St. Louis, Mo., 30 F.4th 680, 687 (8th Cir. 2022) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  To establish a prima face case of discrimination under the MHRA, a plaintiff must establish that:  (1) he is a member of a protected class; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  Guimaraes v. SuperValu, Inc., 674 F.3d 962, 973-74 (8th Cir. 2012).  If the plaintiff sets forth a prima facie discrimination case, the burden shifts to the defendant to "provide a 'legitimate, non-discriminatory justification for its adverse employment action.'"  Muldrow, 30 F.4th at 687 (quoting Bunch v. Univ. of Ark. Bd. of Trus., 863 F.3d 1062, 1068 (8th Cir. 2017)).  See also St.

_____

Plaintiff fails to demonstrate a specific link between his mistreatment at SWAT school in early 2018 and either the negative performance evaluation in late 2019 or the denial of other special assignments.  Plaintiff's rejection from the SWAT team itself is the not the "challenged decision" here, as it occurred more than 180 days before Plaintiff filed his charge of discrimination with the MHRC.  See Mo. Rev. Stat. § 213.075.1.

[11] "Like federal courts, Missouri courts use the burden-shifting analysis developed in McDonnell Douglas ... to evaluate proof in discrimination cases where disparate treatment is alleged."  Eivins v. Mo. Dep't of Corr., 636 S.W.3d 155, 166 (Mo. App. 2021).  When deciding a case under the MHRA, courts are guided by Missouri law and federal employment discrimination case law consistent with Missouri law.  Lampley v. Mo. Comm'n on Hum. Rts., 570 S.W.3d 16, 22 (Mo. banc 2019).

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993).   If the defendant proffers a legitimate justification, the plaintiff bears "the ultimate burden to produce evidence sufficient to create a genuine issue of material fact regarding whether [the defendant's] explanation is mere pretext for intentional discrimination."   Williams v. United Parcel Serv., Inc., 963 F.3d 803, 808 (8th Cir. 2020) (quotation and alterations omitted).

The County asserts that Plaintiff fails to establish the fourth element of his prima facie case – namely, circumstances that give rise to an inference of discrimination.  "[A] plaintiff can satisfy the fourth part of the prima face case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." Guimaraes, 674 F.3d at 974 (quotation omitted).  As previously discussed, Plaintiff does not allege that the County employees who used ethnic slurs or names were decisionmakers.  The Court therefore considers whether Plaintiff demonstrated that the County treated similarly situated white employees more favorably than officers who were members of Plaintiff's protected class.

 "Anyone with whom [a plaintiff] compares his treatment must be 'similarly situated in all relevant respects' – that is, 'the individual used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct, without any mitigating or distinguishing circumstances.'" Hawkins v. McDonough, No. 20-118-CV-W-BP, 2021 WL 5514004, at *7 (W.D. Mo. Aug. 24, 2021) (quoting Evance v. Trumann Health Servs., LLC, 710 F.3d 673, 678 (8th Cir. 2013)).  Plaintiff presents no evidence supporting an inference that similarly situated employees who were not members of his protected class received higher performance evaluations than he did.  In regard to the denial of special assignments and

16

promotions, Plaintiff alleges that, even though he "met the requirements, Caucasians with less experience or tenure were selected for the positions."  [ECF No. 40 at 7]

In support of this allegation, Plaintiff cites his own affidavit, in which he lists the positions for which he applied and, in some cases, the name of the (presumably white) police officer awarded the position.  [See ECF No. 39-2 at ¶ 16]  However, Plaintiff does not identify which "similarly situated" police officers had less experience or tenure than Plaintiff.  Indeed, Plaintiff provides no evidence of the other officers' work history, education, or other qualifications to compare to his own.  See, e.g., Rebouche v. Deere & Co., 786 F.3d 1083, 1087-88 (8th Cir. 2015) (plaintiff failed to establish a prima facie failure-to-promote case under Title VII); Jamerison, 2022 WL 950861, at *4 (the defendant was entitled to summary judgment on the plaintiff's MHRA failure-to-promote claim because the plaintiff "provides no evidence that a Caucasian applicant who similarly did not meet the minimum requirements was interviewed or hired.").  Because Plaintiff failed to demonstrate that the County treated him differently than similarly situated employees, he has not set forth a prima facie case of discrimination and the burden-shifting analysis ends.  See McDonell Douglas, 411 U.S. at 802; Tisdell v. Wilkie, No. 4:19-CV-482, 2021 WL 5474482, at *7 (W.D. Mo. Sep. 21, 2021).  Because Plaintiff presented insufficient evidence to support an inference of race and national-origin discrimination, and therefore failed to establish a prima facie case, the County is entitled to summary judgment on Count I.[12]

### C.  First Amendment Retaliation (Count II)

Defendants assert they are entitled to summary judgment on Plaintiff's claim of First Amendment retaliation under 42 U.S.C. § 1983 because "Plaintiff has not made a prima facie case

---

[12] Having determined that Count I fails on the merits, the Court declines to consider the County's argument that denial of requests for special assignments did not constitute adverse employment actions.

of unlawful First Amendment retaliation premised on his union membership." [ECF No. 37 at 11] In particular, Defendants assert that Plaintiff failed to present evidence supporting his claim that his union activity was a substantial or motivating factor for Defendants' decision to investigate C.P.'s allegations, the manner in which Defendants conducted the investigation, and the resulting disciplinary action.  Additionally, Defendants argue that:  (1) Plaintiff failed to present evidence of an unconstitutional policy or custom as required to establish the County's municipal liability under Monell; and (2) the individual defendants are entitled to qualified immunity.  In response, Plaintiff contends that:  (1) he established  a prima facie case of unlawful First Amendment retaliation based on union activities; (2) the County is liable under section 1983 because Plaintiff presented evidence that the County had a "custom of harassment and disparate treatment of its union members"; and (3) the individual defendants were not entitled to qualified immunity.  [ECF No. 40]

Plaintiff brings his First Amendment claim under 42 U.S.C. § 1983.  "To survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendant acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected right."  Strinni v. Mehlville Fire Protection Dist., 681 F.Supp.2d 1052, 1068 (E.D. Mo. 2010) (quoting Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002)).

The First Amendment freedom of association, applied to the states through the Fourteenth Amendment, provides union members a constitutionally protected right to organize a labor union. Int'l Ass'n of Firefighters, Loc. No. 3808 v. City of Kansas City, Mo., 220 F.3d 969, 972 (8th Cir. 2000).  "The protection applies not only to joining or encouraging others to join a union, but also to holding leadership positions in a union, filing complaints and participating in grievance

proceedings because 'the right of union membership would be "meaningless" unless an employee's right to participate in union activities were also recognized.'" <u>Zumwalt v. City of Wentzville</u>, No. 4:10-CV-561 RWS, 2010 WL 2710496, at *8 (E.D. Mo. July 7, 2010) (quoting <u>Roberts v. Van Buren Pub. Sch.</u>, 773 F.2d 949, 957 (8th Cir. 1985)).  For this reason, the First Amendment "is violated by state action whose purpose is … to intimidate public employees … from taking an active part in [union] affairs or to retaliate against those who do.'" <u>Germann v. City of Kansas City</u>, 776 F.2d 761, 764 (8th Cir. 1985) (alterations in original) (quoting <u>Roberts</u>, 773 F.2d at 957)).

To establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that:  (1) he engaged in an activity protected by the First Amendment; (2) the defendant took adverse employment action against him; and (3) the protected conduct was a "substantial or motivating factor" in the defendant's decision to take the adverse employment action. <u>Davison v. City of Minneapolis, Minn.</u>, 490 F.3d 648, 655 (8th Cir. 2007) (citing <u>Mt. Healthy City Sch. Dist. v. Doyle</u>, 429 U.S. 274, 287 (1977)).  "If the plaintiff meets this burden, the burden shifts to the defendant to demonstrate that the same employment action would have been taken in the absence of the protected activity." <u>Id.</u> (citing <u>Mt. Healthy</u>, 429 U.S. at 287).

The parties do not dispute either that Plaintiff's union membership was an activity protected by the First Amendment or that the IA investigation and disciplinary action constituted adverse employment actions.  Defendants argue, however, that Plaintiff failed to demonstrate that his union membership was a substantial or motivating factor for Defendants' decision to investigate and discipline him.

To demonstrate that a retaliatory motive was a substantial or motivating factor, a plaintiff must "show that the retaliatory motive was a but-for cause of the harm; that is, that the plaintiff

was 'singled out' for adverse treatment because of his exercise of constitutional rights." Kilpatrick v. King, 499 F.3d 759, 767 (8th Cir. 2007) (quotation omitted). "Retaliatory motive may be proved through circumstantial evidence giving rise to an inference of retaliatory intent, but more than a temporal connection is required to survive summary judgment." Ackerman v. State of Iowa, 19 F.4th 1045, 1059 (8th Cir. 2021) (internal quotations omitted). "Whether the protected conduct was a substantial or motivating factor in an employment decision is a question of fact, but the sufficiency of the evidence to create an issue of fact for the jury is solely a question of law." Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing Cox v. Miller County R-1 Sch. Dist., 951 F.2d 927, 931 (8th Cir. 1991)).

"To avoid an adverse grant of summary judgment," Plaintiff must present "affirmative evidence from which a jury could find" that his union activities informed Defendants' decision to investigate and discipline him. Kilpatrick, 499 F.3d at 767 (quoting Crawford-El v. Britton, 523 U.S. 574, 600 (1998)). Significantly, the only union activities alleged by Plaintiff are his union membership and appearances at his own disciplinary and employee grievance meetings with a union representative.[13] "That is a far cry from union organization or advocacy [and] it does not distinguish the plaintiff from any other member of the union[.]" Steckelberg v. Rice, 184 F.Supp.3d 746, 757-58 (D. Neb. 2016) (dismissing retaliation claim where "the only union activities alleged by the plaintiff are his union membership and his reliance on the union contract and union representatives in prosecuting his grievances"). Cf. Davison, 490 F.3d at 656, 658 (genuine issue of material fact existed as to whether plaintiff firefighter's union activity was a

---

[13] At his deposition, Plaintiff stated: "I don't involve myself too much with unions … I show up to work, do my work and try not to get involved in the political aspects of the Police Department of the County." [ECF No. 39-1 at 39]  Plaintiff never held a position with Local 42 or attended a bargaining meeting, and he attended union meetings only "a couple times."  [Id. at 39-40, 218, 221]

motivating factor in the decision not to promote her where the fire chief referred to the plaintiff as "the face of the union" and "expressed displeasure" with her union activity); Zumwalt, 2010 WL 2710496, at *9 (declining to dismiss the plaintiff's First Amendment retaliation claim where the plaintiff alleged he was a "vocal advocate" for collective bargaining rights and the adverse employment action followed shortly after the plaintiff's "collective bargaining negotiation activities").

Furthermore, Plaintiff produced no evidence suggesting that his union activity was a substantial and motivating factor for the alleged adverse employment actions. "[T]emporal proximity between protected activity and an adverse employment action can contribute to establishing the third element of a prima facie case of retaliation." Davison, 490 F.3d at 657. See also Ackerman, 19 F.4th at 1059 (affirming summary judgment for defendant where there was "insufficient temporal proximity to support an inference of causation"). However, Plaintiff does not allege that his participation in any particular union activity preceded the IA investigation or disciplinary action. To the contrary, much of Plaintiff's protected activities (specifically, attending disciplinary and grievance meetings with a union representative) occurred after Defendants initiated the allegedly retaliatory investigation and disciplinary action.

Nor does Plaintiff's case present a situation where the "adverse action cannot be defended by any non-retaliatory explanation[, which may provide] a basis for a reasonable jury to find that the defendant acted with improper motives." Kilpatrick, 499 F.3d at 768. The summary judgment record establishes that Defendants initiated the investigation and disciplinary action because C.P. accused Plaintiff of giving her alcohol and forcing her to have sex with him. Under Department policy, allegations of a "criminal act, including misdemeanor [or] felony" and "grossly inappropriate behavior or performance," required an IA investigation and "immediate removal

from duty without pay pending investigation," respectively.[14]   [See ECF No. 39-5]   In light of
C.P.'s complaint and the Department's disciplinary policy, Plaintiff has failed to "identify
affirmative evidence from which a jury could find" that Defendants acted with retaliatory intent.
Ackerman, 19 F.4th at 1060 (quoting Kilpatrick, 499 F.3d at 769)).

To the extent Plaintiff argues that the manner in which Defendants investigated and
disciplined him were retaliatory, he again fails to identify facts from which a jury could infer
retaliatory motive.[15]   For example, Plaintiff alleges that Chief Todd "leaked information related to
the investigation" to other officers with whom he worked and, prior to completion of the IA
investigation, told "a person outside the County's employment" that Plaintiff was "done" and "had
no future" with the Department.    [ECF No. 40 at 14]    Additionally, Plaintiff complains that
Defendants subjected him to an unusually lengthy polygraph test and violated Department policy
by allowing the investigation and unpaid administrative leave to extend beyond thirty days.  [Id.]
However, Plaintiff fails to identify any facts suggesting that his union membership motivated
Defendants' actions.  See, e.g., Lunow v. City of Oklahoma City, 61 Fed. Appx. 598, 606 (10th
Cir. 2003) (summary judgment was proper because the plaintiffs "failed to present sufficient
evidence to create a genuine issue of fact regarding whether their union activity was a motivating

---

[14] Plaintiff suggests that Defendants' decision to issue a one-day unpaid suspension was retaliatory
because it was made after "St. Charles City Police Department who conducted a criminal
investigation in the matter determined that no wrongdoing occurred."  [ECF No. 40 at 9, 18]
However, Plaintiff mischaracterizes the outcome of the City's investigation.  The decision not to
file criminal charges does not signify that St. Charles City, or any other agency, determined
Plaintiff committed "no wrongdoing."

[15] Although the first amended petition also alleged that Defendants denied Plaintiff special
assignments and/or promotions because of his First Amendment activity, the parties do not address
or acknowledge this claim in the summary judgment materials.  "When a plaintiff fails to defend
or pursue a claim in response to a motion to dismiss or summary judgment, the claim is deemed
abandoned."  Family Dollar Stores of Mo., LLC v. Tsai's Investments, Inc., No. 4:21-CV-572
SRW, 2022 WL 355109, at *14 (E.D. Mo. Feb. 7, 2022) (citing Black v. North Panola Sch. Dist.,
461 F.3d 584, 588 n.1 (5th Cir. 2006)).

factor behind their transfers and their failure to be promoted."); Nagel v. City of Jamestown, N. Dakota, 326 F.Supp.3d 897, 908 (D. N.D. 2018) (the plaintiff "fails to identify any other specific facts that would show how his Fraternal Order membership influenced the decision to terminate him.").

Without specific facts suggesting that his Local 42 membership motivated or influenced Defendants' employment actions, Plaintiff offers evidence that Capt. Hunt harbored anti-union animus "stemming from [Local 42's] refusal to have the union picket the Attorney General Koester's social event" in late 2009 or early 2010. [ECF No. 40 at 17] Plaintiff alleges that, after Local 42 denied his request to picket, Capt. Hunt "dropped his union membership," "began to openly disparage Local 42," and "argued against the Union in at least one meeting[.]"[16] [Id.] Viewing these facts in the light most favorable to Plaintiff, these events, which allegedly transpired nearly ten years before the employment actions at issue in this case, are insufficient to support an inference that Capt. Hunt, or any other Defendant, retaliated against Plaintiff for his union activity. See, e.g., Steckelberg, 184 F.Supp.3d at 758.

In the absence of evidence connecting Plaintiff's union activity to Defendants' investigation and disciplinary action, Plaintiff failed to create an issue of fact as to whether Plaintiff's protected activity was a substantial or motivating factor in the Defendants' decision to take the adverse employment action.[17] The Court therefore finds that Defendants are entitled to summary judgment on Plaintiff's Count II.

---

[16] Defendants move to strike the two affidavits Plaintiff offers in support of these allegations. [See ECF No. 46]

[17] Because Plaintiff fails to present a prima facie case of First Amendment retaliation, the Court declines to consider Defendants' arguments that: (1) Plaintiff failed to present evidence of an unconstitutional municipal policy or custom as required to establish the County's Section 1983 liability; and (2) Plaintiff's claims against Chief Todd, Capt. Hunt, and Dir. Leykam are barred by qualified immunity.

### III.    Motions to Strike

Defendants move to strike Plaintiff's Exhibits 12, 13, and 14 to his response to Defendants' statement of uncontroverted material facts.  [ECF No. 46]  Plaintiff moves to strike Defendants' substitute Exhibit C to their statement of material of facts.  [ECF No. 51]  Both motions to strike are based on the failure to disclose the affiants' names in discovery.

Consideration of the exhibits at issue in these motions to strike were not necessary for determining the merits of Defendants' motion for summary judgment.  The motions to strike exhibits are denied as moot because "the disputed evidence is unnecessary to a decision."  Abdull v. Lovaas Inst. for Early Intervention Midwest, 819 F.3d 430, 436 (8th Cir. 2016).

### IV.    Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [ECF No. 36] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion to strike affidavits [ECF No. 46] and Plaintiff's motion to strike Exhibit C [ECF No. 51] are **DENIED as moot**.

A separate judgment in accordance with this Order and Memorandum is entered this same date.


_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of May, 2022